BJELLAND, LANGE & Co., INC. *v.* UNITED STATES (No. 4633)[1]

United States Court of Customs and Patent Appeals, October 31, 1950

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument October 4, 1950, by Mr. Schwartz and Mr. Donohue]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1187, overruling appellant's protest claiming that herring oil added to and imported with Norwegian sild sardines was not subject to an additional tax of 1½ cents per pound as "fish oil" under the provisions of the Internal Revenue Code, 26 U. S. C. § 2490 and § 2491 (a), as modified by the trade agreement with Iceland, T. D. 50956.

[1] C. A. D. 439.

The invoice described the imported goods as 1,217 cases of Crown Brand Norwegian smoked sild sardines and 1,227 cases of Congress Brand Norwegian smoked sild sardines. The invoice stated also that 2.5 kilos of oil of Norwegian sild sardines had been added to every case of the sild sardines.

The merchandise was assessed with duty not only as "Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances, 30 per centum ad valorem" under paragraph 718 (a) of the Tariff Act of 1930 but also with the additional tax as "fish oil" under the provisions of the Internal Revenue Code and trade agreement hereinbefore described.

There was no protest by appellant against the classification and assessment of the merchandise by the collector under the cited paragraph of the tariff act. Appellant contended in the court below,: as it does here, that the article imported was fish packed in oil, as classified by the collector, and that the herring oil was wholly exempt from additional duty or tax on the theory that packing material surrounding an imported food product is not to be included in computing the duty on that product.

It is not disputed that a sild sardine is a small herring; that the oil of sild sardines is herring oil; and that no oil was shipped as a separate article with the sardines. Appellant has also agreed that if the involved tax is properly assessable, it was assessed upon the correct quantity of the imported oil.

Four cans of sardines each having a net weight of 3¾ ounces were received in evidence as representative of the imported merchandise. With respect to the contents thereof and the process in which the cans were packed, Arthur G. Lange, general manager of appellant corporation, stated:

\* \* \* When the fish are brought to the factory, they are unloaded and then, as all fish are before canning given a short bath in brine, washed off, and then, since all Norwegian sardines, at least almost all Norwegian sardines are smoked, they are put through the smoking process. After they are further prepared by cutting off the heads of the sardines, they are placed, the sardines themselves, are placed in the empty cans, and before the tops of the cans are placed on, the cans are filled with oil. Now this filling process is an automatic process in which the cans pass under the filling machine and a certain amount of oil pre-determined to fit into the requirements of the packing is added so that each can receives an exact amount. And then, after the can is filled with the oil, the lids are placed on the cans and they are put in the closing machine. And thereafter, they are put through the sterilizing machine in which steam pressure and heat is applied so that the cans are pasteurized and will not deteriorate

The witness Lange testified further that the purpose of the oil added to the cans was to preserve the fish therein; that a can which through inadvertence came in without the oil disclosed that the fish were very dark and very dry, unattractive and unmarketable, and nobody would want to take a chance on eating them. The

same witness, so far as pertinent, also testified relative to the use of the involved merchandise, personally and otherwise:

BY MR. SCHWARTZ:

Q. Have you personally used or eaten Norwegian sardines in sild-oil? A. Yes, I have.

Q. Have you observed their use by anyone else? A. Yes, I have.

Q. By any of your customers? A. Yes. We have one customer in New York, a restaurant chain, which normally uses our sardines.

Q. Is it a large chain? A. Yes.

Q. What is it? A. Horn & Hardardt.

Q. In what way have you eaten sardines such as these? A. I have eaten them myself as canapes or sandwiches and in salads.

Q. And in using the sardines yourself, what do you do with the oil?

\*       \*       \*       \*       \*       \*       \*

A. I have discarded it.

Q. Why? A. Because I have only used the sardines. I have used the sardines only. I have lifted them out of the can.

Q. Have you discarded the oil when you used the sardines in making a sandwich, canape, or salad? A. Yes, in every case.

Q. Have you had occasion to learn what Horn & Hardardt does with the oil? A. Yes.

Q. How did you get those facts?

MR. McDERMOTT: I object, Your Honor. It is not the best evidence. Horn & Hardardt are within the shadows of the court. They can be called in here very easily.

JUDGE COLE: Overruled. He may answer.

MR. McDERMOTT: Exception.

A. By eating in the restaurant myself and they were serving them in sandwiches, and there was no oil added to the sandwich. The sardines were there but naturally the oil couldn't be put on the sandwich in the restaurant.

JUDGE COLE: You don't mean that all the oil in the can is discarded, do you?

THE WITNESS: Everything is discarded except that oil which adheres to the fish.

JUDGE COLE: That is a considerable part of it, isn't it, or is it a small part of it?

THE WITNESS: The loose part of the oil, the part that you see the fish in, is discarded. Only that part of the oil is eaten which naturally might adhere.

MR. SCHWARTZ: I will clear that up, Your Honor.

\*       \*       \*       \*       \*       \*

Q. When a tin of sardines is imported, is it a fact that there is a certain proportion of the oil which has become absorbed by the fish? A. Yes.

Q. And is it also a fact that there is a certain proportion of the oil from the fish which has entered the added oil? A. Yes, there is a certain interchange there.

Q. When you refer to the oil which is discarded, however, do you mean the oil which is loose in the tin? A. That is the oil to which I refer.

Jacob Moskowitz, the customs official at the port of New York who examined the merchandise testified on behalf of the Government that he would say that the oil serves as a flavoring medium rather than a packing medium, although he agreed he had never seen a can of sardines imported without oil or some kind of sauce, that the sardines here in issue were packed in oil of Norwegian sild sardines, and

that the oil is expressed from other sild sardines and refined before placing it in the cans.

In reply to a question propounded by Judge Mollison, who also sat during the trial, the witness Moskowitz testified that all Norwegian sardines were currently imported in cans of the size exhibited before the court.

The judgment rendered by the trial court and appealed from was based upon the finding that the evidence in support of appellant's claim that the herring oil was merely packing material not to be included in computing the duty on the sardines was insufficient to overcome the presumption of correctness attaching to the action of the collector. More specifically, the court found that appellant had offered no competent testimony sufficient to establish as a matter of fact that the herring oil which had been added as packing material to the cans of imported sardines had no commercial value in this country and in practice was discarded as worthless by users of the sardines when the cans were opened.

Had the herring oil been imported as a separate article instead of in combination with the sardines, the oil would have been subject to the additional tax under the provisions of the Internal Revenue Code. With certain exceptions not here applicable, section 2491 (c) of the Internal Revenue Code provides for the imposition of a tax not only upon fish oil as a separate article but also upon any article, merchandise, or combination 10 per centum or more of the quantity by weight of which consists of any of the oils specified in section 2491 (a). Section 2493 provides that the tax imposed under sections 2490 and 2491 shall be treated in the same manner as a duty imposed by the Tariff Act of 1930.

The amount of loose and surplus oil in a single can of the imported sardines may have been so meager that it could not have been utilized in a profitable way. However, there were more than 6,000 kilos of oil added to the 2,444 imported cases and it was incumbent upon appellant to establish as a fact that it was neither feasible nor practicable to extract and commercially utilize the imported oil in question. *Wo & Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 337, T. D. 42494; *United States* v. *E. W. J. Hearty, Inc.*, 31 C. C. P. A. (Customs) 106, C. A. D. 257; *Lincoln, Willey & Co. et al.* v. *United States*, 178 Fed. 599; *Wa Chong Co.* v. *United States*, 61 Treas. Dec. 1118, T. D. 45695; *Enbun Co.* v. *United States*, 73 Treas. Dec. 192, T. D. 49388.

The authorities hereinbefore cited hold that substances, dutiable if imported as such, are free of duty when it has been established by a proper showing that they were imported merely as preservative packing for foodstuffs and that such substances have no further use or commercial value in this country. Appellant failed in that respect.

The cases relied upon by appellant do not support its contention that herring oil is intrinsically exempt from duty when imported as packing material with sardines.

The trial court heard the witnesses, carefully weighed the evidence, and we think that it arrived at the right conclusion. The judgment of the United States Customs Court is accordingly *affirmed.*

JACKSON, Judge, concurs in the conclusion.